IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| In the Matter of: | Case No.: |
| CONNECTICUT AVENUE PARTNERS, LLC | 07-04806-8-RDD |
| Debtor | Chapter 11 |

### PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor, Connecticut Avenue Partners, LLC, hereby submits the following Plan of Reorganization:

### I. SUMMARY OF PLAN

The Debtor's Plan of Reorganization ("Plan") is based upon the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize and continue its business operations.

The Debtor will pay the administrative costs in full within ten days of the Effective Date or upon such other mutually acceptable terms as the parties may agree.

The Debtor will pay its tax claims over a period of five years from the Effective Date, with interest at a rate of 6% per annum.

The Debtor will pay the secured claim of Midwest Business Capital in full through the proposed refinance of the Debtor's obligations. In the event the Debtor is unable to satisfy this claim in full within 90 days of the Effective Date ("Refinance Period"), this claim shall be amortized over a period of 20 years, with interest at the rate of 6.75% per annum, as outlined herein.

The Debtor will pay the secured claim of Mehta Group, Inc. in full through the proposed refinance of the Debtor's obligations. In the event the Debtor is unable to satisfy this claim in full within 90 days of the Effective Date ("Refinance Period"), this claim shall be amortized over a period of 10 years, with interest at a rate of 8% per annum, as outlined herein.

The Debtor will treat the claim of Small Business Administration, as outline herein.

The Debtor assumes its executory contracts with Days Inn Worldwide, Inc., GDS and Ecolab Institutional Services, as outlined herein.

The total of general unsecured claims based on claims filed or scheduled as of the filing of this Disclosure Statement is $372,650.61. The deadline for filing claims is April 16, 2008. The Debtor is proposing that claimants in this class will be paid in full through pro-rata distributions over a period of 5 years, as specified herein.

THE PLAN OF REORGANIZATION CONTEMPLATES A CONTINUATION OF THE DEBTOR'S BUSINESS. IN ACCORDANCE WITH THE PLAN, THE DEBTOR INTENDS TO

1

SATISFY CREDITOR CLAIMS WITH INCOME EARNED THROUGH CONTINUED OPERATIONS.

## II. DEFINITIONS

1. "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2. "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth in Section IV, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3. "AVAILABLE CASH" shall mean the total cash available for distribution on the Effective Date.

4. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title ll of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

5. "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6. "CLAIM" shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, as defined in Section 101(5) of the Bankruptcy Code that arose prior to the Confirmation Date against the Debtor.

7. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

9. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

10. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

12. "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured

debts, liabilities, demand or claims of any character whatsoever.

    13.    "DEBTOR" shall mean Connecticut Avenue Partners, LLC.

    14.    "DISBURSING AGENT" shall mean Trawick H. Stubbs, Jr., attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

    15.    "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

    16.    "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

    17.    "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

    18.    "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

    19.    "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

    20.    "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expired; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

    21.    "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim.

    22.    "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

    23.    "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, December 18, 2007.

    24.    "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

    25.    "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

26. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

27. "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

28. "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

29. "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

### III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CREDITORS

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

**A.    Class I – ADMINISTRATIVE COSTS:**

(1)    <u>Classification</u>.  Class I consists of claims for any cost or expense of administration pursuant to Sections 503, 506 and 507 of the Bankruptcy Code.

The following professionals will be paid subject to Court approval:

Stubbs & Perdue, P.A., Attorney for Debtor                         To be determined by the Court
A. G. Salem & Associates, PLLC, Accountant for Debtor    To be determined by the Court

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    <u>Treatment</u>.    Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten (10) days from the Effective Date of the Plan.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim will receive payments from the Debtor's cash flow until paid in full.  Such claims remaining unpaid ten (10) days following the Effective Date shall accrue interest at a rate of eight percent (8%) per annum.

**B.    Class II – Tax claims:**

(1)     Classification.  Class II consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes, county taxes, excise taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service, North Carolina Department of Revenue, Employment Security Commission, or the Cumberland County Tax Collector, plus interest as allowed by law.  The Debtor is aware of the following claims in this class:

| | | |
|---|---|---|
| City of New Bern Tax | Claim 9 | $19,713.44 (priority) |
| Craven County Tax Coll. | Claim 10 | $73,592.42 (secured) |
| Employment Sec. Comm. | Claim 23 | $     693.60 (priority) |
| Employment Sec. Comm. | Claim 24 | $     138.72 (unsecured) |
| Internal Revenue Service | Claim 6 | $87,946.93 (priority) |
| Internal Revenue Service | Claim 6 | $22,144.13 (unsecured) |
| Internal Revenue Service | Claim 25 | $  7,500.08 (administrative) |
| N.C. Dept. of Revenue | Claim 19 | $79,394.53 (priority) |
| N.C. Dept. of Revenue | Claim 19 | $20,983.30 (unsecured) |

(2)     Impairment.  This class will be impaired.

(3)     Treatment.  The Debtor proposes the following treatment:

**Cost and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date of the Plan.

**Unsecured priority tax claims**, if any, described in Section 507(a)(8) of the Bankruptcy Code shall be paid the full amount of their Allowed claim in regular monthly installment payments in cash or cash equivalent over a period not exceeding five (5) years following the Effective Date. Installment payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, and shall include annual interest at the rate of six percent (6%).

**Unsecured general tax claims**, if any, will be treated in Class IX herein.

Furthermore, in the event the Debtor determines it is in its best interest to liquidate its property, it will do so in a commercially reasonable manner.  Those sale proceeds will be distributed in accordance with the priorities of the Bankruptcy Code.

**C.     Class III – Midwest Business Capital ("Midwest"):**

(1)     Classification.  On March 9, 2006, the Debtor and Midwest entered into a promissory note in the original principal amount of $2,000,000.00, with interest accruing at a variable rate of interest equal to the Prime rate plus 1.50% per annum.  Monthly payments under the note are $16,784.00 per month. The note is secured by a first priority deed of trust on the commercial building and land located at 925 Broad Street, New Bern, North Carolina, as well as an Assignment of Rents covering the same property.  Additionally, the Debtor and Midwest entered into a security agreement, granting Midwest a lien on certain personal property, including inventory, equipment, fixtures, and accounts.  Midwest filed claim number 26 in the amount of $1,982,885.16.

(2)     Impairment.   This class will be impaired.

5

(3) <u>Treatment</u>. This obligation shall be treated as a secured obligation of the Debtor in an amount equal to (1) all outstanding principle and interest due on the petition date; plus (2) interest accruing at the non-default rate of interest as described in the note until the Confirmation Date; plus (3) costs and expenses approved by the Court pursuant to Section 506(b); less (4) any post-petition payments. Midwest shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full. The Debtor proposes to pay this secured claim in full through a proposed refinance of its financial obligations within 90 days of the Effective Date ("Refinance Period"). In the event the Debtor is unable to satisfy this claim in full during the Refinance Period, the Debtor proposes to amortize the amount of Midwest's secured claim over a period of 20 years, with interest at the rate of 6.75% per annum. Monthly payments shall commence on the 15th day of the first full month following the Refinance Period. For feasibility purposes, the Debtor estimates that monthly payments under this proposal will be $15,077.15.

Furthermore, in the event the Debtor determines it is in its best interest to liquidate its property, it will do so in a commercially reasonable manner. If any collateral on which Midwest has a lien is sold pursuant to a liquidation by the Debtor, those sale proceeds will be distributed in accordance with the priorities of the Bankruptcy Code.

In the event of a refinance or sale of the property, the Debtor will not pay any pre-payment penalties or other charges provided for in the loan documents, other than interest at the non-default rate.

### D. <u>Class IV – Mehta Group,Inc. ("Mehta")</u>:

(1) <u>Classification.</u> On or about March 9, 2006, the Debtor and Mehta entered into a promissory note in the original principal amount of $78,750.00, with interest accruing at eight percent (8%) per annum. The note provided for 48 payments of $1,922.52 per month. The note is secured by a second priority deed of trust on the commercial building and land located at 925 Broad Street, New Bern, North Carolina. Mehta filed claim number 21 in the amount of $53,854.49.

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>. This obligation shall be treated as a secured obligation of the Debtor in an amount equal to (1) all outstanding principle and interest due on the petition date; plus (2) interest accruing at the non-default rate of interest as described in the note until the Confirmation Date; plus (3) costs and expenses approved by the Court pursuant to Section 506(b); less (4) any post-petition payments. Mehta shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full. The Debtor proposes to pay this secured claim in full through a proposed refinance of its financial obligations within 90 days of the Effective Date ("Refinance Period"). In the event the Debtor is unable to satisfy this claim in full during the Refinance Period, the Debtor proposes to amortize the amount of Mehta's secured claim over a period of 10 years, with interest at the rate of 8% per annum. Monthly payments shall commence on the 15th day of the first full month following the Refinance Period. For feasibility purposes, the Debtor estimates that monthly payments under this proposal will be $653.40.

Furthermore, in the event the Debtor determines it is in its best interest to liquidate its property, it will do so in a commercially reasonable manner. If any collateral on which Mehta has a lien is sold pursuant to a liquidation by the Debtor, those sale proceeds will be distributed in accordance with the priorities of the Bankruptcy Code.

### E. Class V – Small Business Administration ("SBA"):

(1) <u>Classification</u>. SBA guaranteed the loan from Midwest to the Debtor, pursuant to s Standby Creditor's Agreement, Security Agreement, Unconditional Agreement and Note, dated March 9, 2006.

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>. This obligation shall be treated as a contingent obligation of the Debtor. Unless the Debtor fails to make payments to Midwest as provided in this plan or as otherwise ordered by the court, the Debtor will make no payments to this class. In the event the Debtor fails to make its required payments to Midwest, and SBA is required to pay all or a portion of the Midwest claim, the Debtor shall pay SBA consistent with the treatment set forth for Midwest, as set forth herein.

### F. Class VI – Days Inn Worldwide, Inc. ("Days Inn"):

(1) <u>Classification</u>. On March 9, 2006, the Debtor and Days Inn entered into a Days Inn Worldwide, Inc. License Agreement ("License Agreement"). Pursuant to the License Agreement the Debtor's duties include paying fees to Days Inn, maintaining certain facility standards, and participating in designated training programs. In additional to these obligations, the License Agreement provides the Debtor with the right to use the Days Inn Hotel name, its marketing programs, as well as other resources of Days Inn. Days Inn has filed claim number 17 in the amount of $147,943.57, for unpaid recurring fees, obligations under the License Agreement, and the balance owed on an Initial Fee Note.

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>. Pursuant to Section 365 of the Bankruptcy Code, the Debtor hereby assumes its executory contract with Days Inn. The Debtor and Days Inn are in the process of negotiating a consent order governing the terms of the assumption of the executory contract with Days Inn and providing the method by which the arrearages will be paid. It is anticipated that the majority of the arrearages will be cured through the proposed refinance of the financial obligations.

### G. Class VII – GDS:

(1) <u>Classification.</u> Prior to the filing of its petition, the Debtor entered into an executory contract with GDS for waste containers.

(2) <u>Impairment</u>. This class will be unimpaired.

  (3) <u>Treatment</u>. Pursuant to Section 365 of the Bankruptcy Code, the Debtor hereby assumes its executory contract with GDS.

  **H.** **<u>Class VIII – Ecolab Institutional Services ("Ecolab"):</u>**

  (1) <u>Classification.</u> Prior to the filing of its petition, the Debtor and Ecolab entered into a lease for a dishwasher. Ecolab filed claim number 13 in the amount of $525.67.

  (2) <u>Impairment</u>. This class will be impaired.

  (3) <u>Treatment</u>. Pursuant to Section 365 of the Bankruptcy Code, the Debtor hereby assumes its lease with Ecolab. The Debtor will satisfy its arrearages to Ecolab by making monthly payments in the amount of $50.00 to Ecolab in addition to its regular contractual payments commencing with the next monthly payment due to Ecolab after the Effective Date and continuing monthly until such time as all arrearages have been satisfied.

  **I.** **<u>Class IX – General Unsecured Creditors:</u>**

  (1) <u>Classification</u>. This class consists of all allowed, undisputed, non-contingent unsecured claims listed on the Debtor's petition or otherwise approved by the Court.

  (2) <u>Impairment.</u> This class will be impaired.

  (3) <u>Treatment.</u> The approximate total of general unsecured claims based on claims filed or scheduled as of the date of the filing of this Disclosure Statement is $372,650.61. The deadline for filing claims is April 16, 2008. The Debtor shall pay quarterly installments of $18,632.53, commencing one year from the Effective Date, and continuing quarterly thereafter for 5 years. All payments to this class shall be distributed pro rata.

  The Debtor will also investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548. Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

  **J.** **<u>Class X – Equity Security Holders:</u>**

  (1) <u>Classification</u>.  This class consists of the Debtor's shareholders:

    John W.R. Bradley  56% member ownership
    Channing Steele   44% member ownership

  (2) <u>Impairment</u>.  This class will be unimpaired.

  (3) <u>Treatment</u>. Equity security holders shall retain their ownership interests upon confirmation of the Debtor's Plan.

### IV.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A. The Debtor shall deposit all revenue into a designated bank account and disburse all funds in accordance with the terms of this Plan.

B. <u>Sale of Real Property.</u>  The Debtor's Plan calls for the possible sale of certain real property. The Debtor shall sell this real property in a commercially reasonable manner, and distribute all proceeds of sale according to the respective treatments set forth above for each secured creditor and in accordance with the priorities of the Bankruptcy Code. The Debtor may sell such property without filing further motions with the Court.

C. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.

D. The Debtor will further execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of this Plan and the Bankruptcy Code.

E. The Debtor shall take such other action as necessary to satisfy the other terms and requirements of this Plan and the Bankruptcy Code.

F. All funds necessary for the implementation of this Plan shall be obtained from funds (1) in the possession of the Debtor; (2) derived from the Debtor's continued business operations; (3) derived from the refinance of the Debtor's financial obligations; or (4) derived from the net proceeds from the liquidation of the Debtor's property.

G. RESERVE FOR DISPUTED CLAIMS: On and after the Effective Date, the Debtor will reserve distributions for the holders of Disputed Claims in a segregated account (the "Disputed Claims Reserve") for the benefit of the holders of the Disputed Claims entitled thereto under the Plan. Except to the extent that the Court shall have estimated under Section 502(c) of the Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claims Reserve an amount of cash which would have been disbursed on account of all Disputed Claims if all Disputed Claims were allowed in the full amount claimed by the holders thereof.  At such time as a Disputed Claim becomes an Allowed Claim, the distribution which would have been disbursed had the Disputed Claim been an Allowed Claim on the Effective Date shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim within thirty days.  Claimants for which deposits have been made to the Disputed Claims Reserve shall be considered to have been paid on such date that the Debtor deposits the full amount of the Disputed Claim, or such amount required by the Court, in the Disputed Claims Reserve.   Confirmation of this Plan does not bar a party in interest from objecting to a claim which is not filed in accordance with Federal Bankruptcy Rules 3001 or 3002.

H. Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein, as allowed by Section 506(b)  or as allowed by a Final Order of the Court.

I.      All payments, distributions, or transfer to be made under the Plan, except as expressly provided by the Plan or the Court, shall be made without interest.

J.      Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retain and reserve any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§545, 546, 547, 548, 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

K.      Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

L      All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date.

## V.  PROVISIONS GOVERNING DISTRIBUTIONS

A.      <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor′s schedules of liabilities.

B.      <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.      If a claim is listed in the plan as secured and the creditor files a proof of claim as an unsecured creditor, the creditor shall be treated as unsecured for purposes of distribution and for any other purpose under the Plan.

## VI.  REJECTION OF EXECUTORY CONTRACTS

Except as specified herein, all pre-petition contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been assumed by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor. All contractual provisions regarding arbitration or alternative dispute

10

resolution are rejected in connection with the administration of this Chapter 11 case.

## VI.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VIII.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A. <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B. <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4) Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. <u>Acceptances Necessary to Confirm the Plan</u>. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. <u>Confirmation of Plan Without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

G. Acceptance by creditors of payments under this Plan and/or failure of any creditor to file an objection to confirmation of the Plan herein, constitutes waiver of any right(s) of said creditor(s) to seek enforcement of any arbitration agreement and constitutes consent to the removal of any arbitration clause from any type of contract or contracts with the Debtor herein.

## IX. "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X. APPLICATION OF PLAN PAYMENTS

A. All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principle and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs

and/or attorneys fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.      Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. Section 524(i).

## XI.  RELEASE OF TITLE TO PROPERTY

A.      <u>Vehicles</u>.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case.  The debtor(s) specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B.      <u>Real Property</u>.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor.  The failure of any such party to comply with this section shall results in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan.  Such an enforcement proceeding may be filed by the Debtor in this case either before or after the the closing of this case.  The Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XII.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the

purposes of Sections 105(a), 1127 and 1142 of the Code and for, without limitation, the following purposes, <u>inter</u> <u>alia</u>:

    1.    to determine any and all objections to the allowance of claims and/or interests;

    2.    to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

    3.    to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

    4.    to determine all controversies and disputes arising under or in connection with the Plan;

    5.    to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

    6.    to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

    7.    to determine such other matters and for such other purposes as may be provided for in the confirmation order;

    8.    to determine all disputes regarding property of the estate;

    9.    to establish and adjust procedures for the orderly administration of the estate;

    10.    to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

    11.    to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XIII.  MISCELLANEOUS PROVISIONS

A.    <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.    <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

     D.    <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

     E.    <u>Liens</u>.  All liens remaining in favor of any creditor in this action against the real property conveyed prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

     F.    <u>Arbitration</u>.  The plan filed by the Debtor herein specifically rejects, avoids, cancels, modifies, and otherwise releases the Debtor from any and all contractual provisions, with any party or entity, which could or may impose on the Debtor any duty, requirement or obligation to submit any and all claims, demands, or causes of action of the Debtor or any defenses, affirmative or otherwise, of any nature whatsoever, whether known or unknown, and whether arising pre-petition or post-petition, to any form of binding arbitration or alternative dispute resolution.  Consequently, confirmation of this plan shall constitute a finding that any such clauses, conditions or provisions, whether arising under the Federal Arbitration Act or any state rule, statute, or regulation, are invalid, void and otherwise unenforceable as to the Debtor.

     G.    <u>Proofs of Claim</u>.  The Debtor reserves the right to object to any proof of claim that is not filed in strict compliance with Rule 3001 of the Bankruptcy Rules and furthermore reserves any and all claims, causes of action, offsets, or defenses the debtor(s) may have with respect to any such claim.  Furthermore, to the extent a filed proof of claim is inconsistent with this Plan or with any of the Schedules or Statements filed in this case, then and in that event the Debtor reserves the right to object and to pursue any and all legal claims related to or arising out of the transactions or occurrences giving rise to and otherwise related with the said claim or claims.  To the extent the Debtor raises an objection to a filed proof of claim, or to a notice of transfer of a filed claims, or files any adversary proceeding related to such an original claim or a transferred claim, then and in that event this Plan shall be deemed to be automatically amended so as to indicate that such a claim is disputed, contingent and unliquidated.  The Debtor also reserves to the estate or the Debtor all claims or causes of action it may have, could have or might have based on any claim filed in this case by any creditor, assignee, or transferee and nothing in this Plan shall be deemed a waiver of any such claims or causes of action.

(this space intentionally left blank)

Respectfully submitted, this the 16th day of April, 2008.

                                                s/Trawick H. Stubbs, Jr.
                                                TRAWICK H. STUBBS, JR.
                                                N.C. State Bar #4221

                                                s/George M. Oliver
                                                GEORGE M. OLIVER
                                                N.C. State Bar #26587

                                                STUBBS & PERDUE, P.A.
                                                Attorneys for Debtor
                                                P.O. Box 1654
                                                New Bern, NC  28563
                                                (252) 633-2700

                                                Connecticut Avenue Partners, LLC

                                                By: s/John W.R. Bradley
                                                     John W.R. Bradley
                                                     Manager/Member