IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

In the Matter of:  
CONNECTICUT AVENUE PARTNERS, LLC  
Debtor

Case No.:  
07-04806-8-RDD  
Chapter 11

## DISCLOSURE STATEMENT

Pursuant to the provisions of Section 1125(b) of the Bankruptcy Code, the Debtor hereby submits the following information:

### I. PURPOSE

The purpose of this Disclosure Statement ("Disclosure Statement") is to provide each holder of a claim against the Debtor with adequate information about the Debtor and the Debtor's Plan of Reorganization so that each holder of a claim may make an informed decision about whether to accept or reject the Plan. Attached hereto as **Exhibits "A"** and **"B"** are summaries of the Debtor's assets and liabilities.

### II. SUMMARY OF PLAN

The Debtor's Plan of Reorganization ("Plan") is based upon the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize and continue its business operations.

The Debtor will pay the administrative costs in full within ten days of the Effective Date or upon such other mutually acceptable terms as the parties may agree.

The Debtor will pay its tax claims over a period of five years from the Effective Date, with interest at a rate of 6% per annum.

The Debtor will pay the secured claim of Midwest Business Capital in full through the proposed refinance of the Debtor's obligations. In the event the Debtor is unable to satisfy this claim in full within 90 days of the Effective Date ("Refinance Period"), this claim shall be amortized over a period of 20 years, with interest at the rate of 6.75% per annum, as outlined herein.

The Debtor will pay the secured claim of Mehta Group, Inc. in full through the proposed refinance of the Debtor's obligations. In the event the Debtor is unable to satisfy this claim in full within 90 days of the Effective Date ("Refinance Period"), this claim shall be amortized over a period of 10 years, with interest at a rate of 8% per annum, as outlined herein.

The Debtor will treat the claim of Small Business Administration, as outline herein.

1

The Debtor assumes its executory contracts with Days Inn Worldwide, Inc., GDS and Ecolab Institutional Services, as outlined herein.

The total of general unsecured claims based on claims filed or scheduled as of the filing of this Disclosure Statement is $372,650.61. The deadline for filing claims is April 16, 2008. The Debtor is proposing that claimants in this class will be paid in full through pro-rata distributions over a period of 5 years, as specified herein.

THE PLAN OF REORGANIZATION CONTEMPLATES A CONTINUATION OF THE DEBTOR'S BUSINESS. IN ACCORDANCE WITH THE PLAN, THE DEBTOR INTENDS TO SATISFY CREDITOR CLAIMS WITH INCOME EARNED THROUGH CONTINUED OPERATIONS.

### III. HISTORY AND BUSINESS STRUCTURE

The Debtor filed a Chapter 11 petition December 18, 2007. The Debtor is a North Carolina limited liability corporation that operates a Days Inn Hotel in New Bern, North Carolina.

The filing of this case was necessitated by a combination of factors. The Debtor purchased the hotel property on March 9, 2006. Since that time, it has expended considerable funds and effort to rehabilitate the hotel. The Debtor requires additional financing to finish its renovations, particularly to the outside of the hotel. The Debtor's operations have been negatively effected by the suspension of its franchise with Days Inn. This franchise has not been terminated, however, and the Debtor has been negotiating with Days Inn to remove the suspension. Once the suspension is lifted, the Debtor will be once again able to receive the benefits of Days Inn's website and toll-free reservation system. Along with the completion of the renovations, this should allow the Debtor's cash flow to increase and allow it to pay its debts as they come due.

The Debtor's gross receipts in 2006 were $911,855.45 and in 2007 were approximately $898,376.06.

### IV. CLASSIFICATION AND TREATMENT OF CLASSES OF CREDITORS

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

A.   **Class I – ADMINISTRATIVE COSTS:**

(1)   Classification. Class I consists of claims for any cost or expense of administration pursuant to Sections 503, 506 and 507 of the Bankruptcy Code.

The following professionals will be paid subject to Court approval:

Stubbs & Perdue, P.A., Attorney for Debtor                         To be determined by the Court

        A. G. Salem & Associates, PLLC, Accountant for Debtor    To be determined by the Court

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    <u>Treatment</u>.    Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten (10) days from the Effective Date of the Plan.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim will receive payments from the Debtor's cash flow until paid in full. Such claims remaining unpaid ten (10) days following the Effective Date shall accrue interest at a rate of eight percent (8%) per annum.

B.    **Class II – Tax claims:**

(1)    <u>Classification</u>.    Class II consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes, county taxes, excise taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service, North Carolina Department of Revenue, Employment Security Commission, or the Cumberland County Tax Collector, plus interest as allowed by law. The Debtor is aware of the following claims in this class:

| | | |
|---|---|---|
| City of New Bern Tax | Claim 9 | $19,713.44 (priority) |
| Craven County Tax Coll. | Claim 10 | $73,592.42 (secured) |
| Employment Sec. Comm. | Claim 23 | $     693.60 (priority) |
| Employment Sec. Comm. | Claim 24 | $     138.72 (unsecured) |
| Internal Revenue Service | Claim 6 | $87,946.93 (priority) |
| Internal Revenue Service | Claim 6 | $22,144.13 (unsecured) |
| Internal Revenue Service | Claim 25 | $  7,500.08 (administrative) |
| N.C. Dept. of Revenue | Claim 19 | $79,394.53 (priority) |
| N.C. Dept. of Revenue | Claim 19 | $20,983.30 (unsecured) |

(2)    <u>Impairment</u>. This class will be impaired.

(3)    <u>Treatment</u>. The Debtor proposes the following treatment:

**Cost and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date of the Plan.

**Unsecured priority tax claims**, if any, described in Section 507(a)(8) of the Bankruptcy Code shall be paid the full amount of their Allowed claim in regular monthly installment payments in cash or cash equivalent over a period not exceeding five (5) years following the Effective Date. Installment payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, and shall include annual interest at the rate of six percent (6%).

3

**Unsecured general tax claims**, if any, will be treated in Class IX herein.

Furthermore, in the event the Debtor determines it is in its best interest to liquidate its property, it will do so in a commercially reasonable manner. Those sale proceeds will be distributed in accordance with the priorities of the Bankruptcy Code.

  C. <u>**Class III – Midwest Business Capital ("Midwest")**</u>:

  (1) <u>Classification</u>. On March 9, 2006, the Debtor and Midwest entered into a promissory note in the original principal amount of $2,000,000.00, with interest accruing at a variable rate of interest equal to the Prime rate plus 1.50% per annum. Monthly payments under the note are $16,784.00 per month. The note is secured by a first priority deed of trust on the commercial building and land located at 925 Broad Street, New Bern, North Carolina, as well as an Assignment of Rents covering the same property. Additionally, the Debtor and Midwest entered into a security agreement, granting Midwest a lien on certain personal property, including inventory, equipment, fixtures, and accounts. Midwest filed claim number 26 in the amount of $1,982,885.16.

  (2) <u>Impairment</u>. This class will be impaired.

  (3) <u>Treatment</u>. This obligation shall be treated as a secured obligation of the Debtor in an amount equal to (1) all outstanding principle and interest due on the petition date; plus (2) interest accruing at the non-default rate of interest as described in the note until the Confirmation Date; plus (3) costs and expenses approved by the Court pursuant to Section 506(b); less (4) any post-petition payments. Midwest shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full. The Debtor proposes to pay this secured claim in full through a proposed refinance of its financial obligations within 90 days of the Effective Date ("Refinance Period"). In the event the Debtor is unable to satisfy this claim in full during the Refinance Period, the Debtor proposes to amortize the amount of Midwest's secured claim over a period of 20 years, with interest at the rate of 6.75% per annum. Monthly payments shall commence on the 15th day of the first full month following the Refinance Period. For feasibility purposes, the Debtor estimates that monthly payments under this proposal will be $15,077.15.

Furthermore, in the event the Debtor determines it is in its best interest to liquidate its property, it will do so in a commercially reasonable manner. If any collateral on which Midwest has a lien is sold pursuant to a liquidation by the Debtor, those sale proceeds will be distributed in accordance with the priorities of the Bankruptcy Code.

In the event of a refinance or sale of the property, the Debtor will not pay any pre-payment penalties or other charges provided for in the loan documents, other than interest at the non-default rate.

  D. <u>**Class IV – Mehta Group,Inc. ("Mehta")**</u>:

  (1) <u>Classification.</u> On or about March 9, 2006, the Debtor and Mehta entered into a

4

promissory note in the original principal amount of $78,750.00, with interest accruing at eight percent (8%) per annum. The note provided for 48 payments of $1,922.52 per month. The note is secured by a second priority deed of trust on the commercial building and land located at 925 Broad Street, New Bern, North Carolina. Mehta filed claim number 21 in the amount of $53,854.49.

   (2)   Impairment.   This class will be impaired.

   (3)   Treatment.   This obligation shall be treated as a secured obligation of the Debtor in an amount equal to (1) all outstanding principle and interest due on the petition date; plus (2) interest accruing at the non-default rate of interest as described in the note until the Confirmation Date; plus (3) costs and expenses approved by the Court pursuant to Section 506(b); less (4) any post-petition payments. Mehta shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full. The Debtor proposes to pay this secured claim in full through a proposed refinance of its financial obligations within 90 days of the Effective Date ("Refinance Period"). In the event the Debtor is unable to satisfy this claim in full during the Refinance Period, the Debtor proposes to amortize the amount of Mehta's secured claim over a period of 10 years, with interest at the rate of 8% per annum. Monthly payments shall commence on the 15th day of the first full month following the Refinance Period. For feasibility purposes, the Debtor estimates that monthly payments under this proposal will be $653.40.

   Furthermore, in the event the Debtor determines it is in its best interest to liquidate its property, it will do so in a commercially reasonable manner. If any collateral on which Mehta has a lien is sold pursuant to a liquidation by the Debtor, those sale proceeds will be distributed in accordance with the priorities of the Bankruptcy Code.

   E.   **Class V – Small Business Administration ("SBA"):**

   (1)   Classification.   SBA guaranteed the loan from Midwest to the Debtor, pursuant to s Standby Creditor's Agreement, Security Agreement, Unconditional Agreement and Note, dated March 9, 2006.

   (2)   Impairment.   This class will be impaired.

   (3)   Treatment.   This obligation shall be treated as a contingent obligation of the Debtor. Unless the Debtor fails to make payments to Midwest as provided in this plan or as otherwise ordered by the court, the Debtor will make no payments to this class. In the event the Debtor fails to make its required payments to Midwest, and SBA is required to pay all or a portion of the Midwest claim, the Debtor shall pay SBA consistent with the treatment set forth for Midwest, as set forth herein.

   F.   **Class VI – Days Inn Worldwide, Inc. ("Days Inn"):**

   (1)   Classification.   On March 9, 2006, the Debtor and Days Inn entered into a Days Inn Worldwide, Inc. License Agreement ("License Agreement"). Pursuant to the License Agreement the Debtor's duties include paying fees to Days Inn, maintaining certain facility standards, and

5

participating in designated training programs. In additional to these obligations, the License Agreement provides the Debtor with the right to use the Days Inn Hotel name, its marketing programs, as well as other resources of Days Inn. Days Inn has filed claim number 17 in the amount of $147,943.57, for unpaid recurring fees, obligations under the License Agreement, and the balance owed on an Initial Fee Note.

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    <u>Treatment</u>.    Pursuant to Section 365 of the Bankruptcy Code, the Debtor hereby assumes its executory contract with Days Inn. The Debtor and Days Inn are in the process of negotiating a consent order governing the terms of the assumption of the executory contract with Days Inn and providing the method by which the arrearages will be paid. It is anticipated that the majority of the arrearages will be cured through the proposed refinance of the financial obligations.

G.    **<u>Class VII – GDS:</u>**

(1)    <u>Classification.</u> Prior to the filing of its petition, the Debtor entered into an executory contract with GDS for waste containers.

(2)    <u>Impairment</u>.    This class will be unimpaired.

(3)    <u>Treatment</u>.    Pursuant to Section 365 of the Bankruptcy Code, the Debtor hereby assumes its executory contract with GDS.

H.    **<u>Class VIII – Ecolab Institutional Services ("Ecolab"):</u>**

(1)    <u>Classification.</u> Prior to the filing of its petition, the Debtor and Ecolab entered into a lease for a dishwasher. Ecolab filed claim number 13 in the amount of $525.67.

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    <u>Treatment</u>.    Pursuant to Section 365 of the Bankruptcy Code, the Debtor hereby assumes its lease with Ecolab. The Debtor will satisfy its arrearages to Ecolab by making monthly payments in the amount of $50.00 to Ecolab in addition to its regular contractual payments commencing with the next monthly payment due to Ecolab after the Effective Date and continuing monthly until such time as all arrearages have been satisfied.

I.    **<u>Class IX – General Unsecured Creditors:</u>**

(1)    <u>Classification</u>. This class consists of all allowed, undisputed, non-contingent unsecured claims listed on the Debtor's petition or otherwise approved by the Court.

(2)    <u>Impairment.</u>    This class will be impaired.

(3)    Treatment.    The approximate total of general unsecured claims based on claims filed or scheduled as of the date of the filing of this Disclosure Statement is $372,650.61. The deadline for filing claims is April 16, 2008. The Debtor shall pay quarterly installments of $18,632.53, commencing one year from the Effective Date, and continuing quarterly thereafter for 5 years. All payments to this class shall be distributed pro rata.

The Debtor will also investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548. Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

J.    **Class X – Equity Security Holders:**

(1)    Classification. This class consists of the Debtor's shareholders:

John W.R. Bradley    56% member ownership
Channing Steele      44% member ownership

(2)    Impairment. This class will be unimpaired.

(3)    Treatment. Equity security holders shall retain their ownership interests upon confirmation of the Debtor's Plan.

## V.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Each pre-petition executory contract or unexpired lease which was not rejected, assumed, or assigned during the Debtor's Chapter 11 case shall be deemed rejected by the Debtor as of the Effective Date unless otherwise assumed herein. Any person with a Claim arising from such rejection shall be deemed to hold a claim in Class IX and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## VI.  DISCLAIMER

All parties are advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan or before voting on any other matter as provided for herein.

Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan itself, the Disclosure Statement, and all exhibits annexed thereto. The statements contained in this Disclosure Statement are made only as of the date hereof. No assurances exist that the statements contained herein will be correct any time hereafter.

The information contained in this Disclosure Statement is included herein for purposes of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how to vote on the Plan. No representations concerning the Debtor are authorized by the Debtor other than as set forth in this Disclosure Statement. Any other representations or inducements made

to solicit your acceptance that are not contained in this Disclosure Statement should not be relied upon by you in arriving at your decision to accept or reject the Plan.

With respect to adversary proceedings, contested matters, other actions, or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver; rather, this Disclosure Statement shall constitute statements made in connection with settlement negotiations.

This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding involving the Debtor or any other party. Furthermore, this Disclosure Statement shall not be construed to be conclusive advice on the legal effects, including, but not limited to the tax effects, of the Debtor's Plan of Reorganization. You should consult your legal or tax advisor on any questions or concerns regarding the tax or other legal consequences of the Plan.

The information contained herein is not the subject of a certified audit and formal appraisals. For the foregoing reason, as well as because of the impossibility of making assumptions, estimates, and projections into the future with absolute accuracy, the Debtor is unable to warrant or represent that the information contained in this Disclosure Statement is complete and accurate, although every reasonable effort has been made to present complete and accurate information. The Debtor's records are dependent upon internal accounting methods. The records kept by the Debtor are not warranted or represented to be free of any inaccuracy; however, every reasonable effort has been made to present accurate information. As a result, valuations and liabilities are estimated. Although substantial efforts have been made to be complete and accurate, the Debtor is unable to warrant or represent the full and complete accuracy of the information contained herein. Counsel for the Debtor has not independently verified any of the information provided by the Debtor and does not make any representations or warranties with respect to the truth or accuracy of any of the information presented.

## VII.   PAYMENTS UNDER PLAN ARE IN FULL AND FINAL SATISFACTION OF DEBT

Except as otherwise provided in Section 1141 of the Bankruptcy Code, or the Plan, the payments and distributions made pursuant to the Plan will be in full and final satisfaction, settlement, release, and discharge, as against the Debtor, of any and all claims against, and interests in, the Debtor, as defined in the Bankruptcy Code, including, without limitation, any Claim or Equity Interest accrued or incurred on or before the Confirmation Date, whether or not (i) a proof of claim or interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim or Equity Interest is allowed under Section 501 of the Bankruptcy Code, or (iii) the holder of such Claim or Equity Interest has accepted the Plan.

## VIII.  POTENTIAL MATERIAL FEDERAL TAX CONSEQUENCES

The Debtor is a limited liability company which will be treated as a partnership for federal and state income tax purposes. As a result, all items of income, gain, loss, deduction and credit pass through to the members of the Debtor in proportion to their membership interests in the Debtor.

8

The Debtor's debts are to be paid in full under the terms of the Plan. As a result, there should be no recognition of cancellation of indebtedness income to be passed through to the members of the Debtor.

The source for Payments under the Plan are receipts from the operation of the Debtor's business. The tax treatment of these receipts will be consistent with the treatment thereof outside of bankruptcy under the Debtor's method of accounting for receipts of this nature. To the extent such income is not offset by expenses described below, it will pass through to the members in proportion to their membership interests, resulting in an increase in their bases in their membership interests and capital account balances.

Administrative expenses paid by the Debtor will be deductible by the Debtor, and these ordinary deductions should be passed through to the Members. The same is true of interest expenses and any unsecured claims which are paid by the Debtor under the Plan to the extent they have not already been deducted and would otherwise be deductible as ordinary and necessary business expenses of the Debtor. These deductions will reduce the members' bases in their membership interests and, therefore, their capital account balances.

The Debtor is a North Carolina limited liability company doing business in North Carolina. Because North Carolina income tax law follows federal income tax law, the issues discussed above generally applies equally to the Debtor and the members for state income tax purposes.

For federal income tax purposes, loan creditors who receive principal payments under the Plan will recognize capital gain or loss in an amount equal to the difference between the amount of the principal payments and their bases in their claim. (A creditor may have a basis in its claim which is different from the face amount of the indebtedness as a result of charge-offs, or because it acquired its claim for something other than the face amount from the original lender.) Any interest payments received by creditors under the Plan will generate ordinary income to such creditors, to the extent such amounts have not already been accrued.

Trade creditors of the Debtor who receive payments under the Plan will recognize federal taxable income in a manner consistent with their methods of accounting for receipts of this nature.

To the extent creditors are subject to North Carolina income tax, their treatment for state tax purposes will generally follow the federal treatment discussed above. The income tax treatment of creditors in states other than North Carolina is beyond the scope of this disclosure statement.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department and/or IRS, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. A formal and thorough written tax opinion would first be required for any tax advice contained in this communication to be used to avoid tax related penalties. Please consult your own tax

professional.

## IX. PROVISIONS FOR VOTING ON A PLAN

A. <u>Creditors Allowed to Vote and Deadline.</u> Creditors holding allowed claims are entitled to vote to accept or reject the Debtor's Plan of Reorganization. The Court has fixed a date by which ballots upon the proposed Plan must be filed with counsel for the Debtor as an agent of the Court. Even though a creditor may not choose to vote, or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each class of creditors and/or is confirmed by the Court. Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim or interest for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or will be made will be allowed for distribution only after determination by the Court. Such determination of allowed status may be made before or after the Plan is confirmed.

B. <u>Voting Provisions.</u> In order for the Plan to be accepted by the class of creditors holding general unsecured claims (Class IX under the Plan), creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in the total number of allowed claims of creditors voting on the Plan must accept the Plan. Under certain limited circumstances more fully described in 11 U.S.C. Section 1129(b), the Court may confirm the Plan by a "cramdown" notwithstanding the rejection thereof by more than one-third (1/3) in amount or one-half (1/2) in number of the creditors voting on the Plan. The Debtor intends to seek confirmation under 11 U.S.C. Section 1129(b) in the event any class of creditors rejects the Plan.

C. <u>Representations Limited.</u> No representation concerning the Debtor, particularly regarding future business operations or the value of the Debtor's' assets, has been authorized by the Debtor except as set forth in this statement. You should not rely on any other representations or inducements offered to you to secure your acceptance or decide how to vote on the Plan. Any person making representations or inducements concerning acceptance or rejection of the Plan should be reported to counsel for the Debtor.

While every effort has been made to provide the most accurate information available, the Debtor is unable to warrant or represent that all information is without inaccuracy. No known inaccuracies are set forth herein. Further, much of the information contained herein consists of projections of future performance. While every effort has been made to ensure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, the Debtor have not undertaken to certify or warrant the absolute accuracy of the projections.

No current formal appraisals have been undertaken of the Debtor's property for the purpose of preparing this Disclosure Statement. The property values which were assigned and summarized below are the Debtor-in-Possession's best estimates of the values of the property as of the time of the filing of this Disclosure Statement. However, the Debtor has sought the opinions of persons experienced in valuing property in arriving at its estimates of values. These values may differ from

values placed on the property at the time of the filing of the petition for relief and the subsequent schedules.

## X. ACCEPTANCE AND CONFIRMATION

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The confirmation hearing will be scheduled at a time and place to be determined by the Bankruptcy Court. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the confirmation hearing.

At the confirmation hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that (i) the Plan has classified Claims in a permissible manner; (ii) the Plan is in the "best interests" of all Creditors; (iii) the Plan is feasible; (iv) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances; (v) the Plan and its proponent comply with various technical requirements of the Bankruptcy Code; (vi) the Debtor has proposed the Plan in good faith; (vii) any payments made or promised in connection with the Plan are subject to the approval of the Bankruptcy Court as reasonable; and (viii) the Plan provides specified recoveries for certain priority claims. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation hearing.

A.     **Classification of Claims**. The Bankruptcy Code requires that a plan place each creditor's claim in a class with "substantially similar" claims. The Debtor believes that the Plan's classification of claims complies with the requirements of the Bankruptcy Code and applicable case law.

B.     **The Best Interests Test**. Notwithstanding acceptance of the Plan in accordance with Section 1126 of the Bankruptcy Code, the Bankruptcy Court must find, whether or not any party in interest objects to Confirmation, that the Plan is in the best interests of the Creditors. Bankruptcy courts have generally defined "best interests" as the Bankruptcy Code's requirement that, under any plan of reorganization, each member of an impaired class of creditors must receive or retain, on account of its claim, property of a value, as of the effective date of the plan, that is not less than the amount such creditor would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan is in the best interests of all Creditors.

To determine what the Creditors would receive if the Debtor were liquidated under chapter 7, the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case needs to be considered. The amount that would be available for the satisfaction of Claims would consist of the Debtor's interest in the net proceeds resulting from the disposition of the Estate's assets, augmented by the Debtor's interest in the cash on hand. The Estate's interest would be further reduced by the amount of any Secured Claims, the costs and expenses of the liquidation,

and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business.

The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such a trustee may engage to assist in the liquidation.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time the Case was pending under chapter 11, including compensation for the Debtor, attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

For the reasons discussed above, the Debtor has concluded that the Plan provides Creditors with a recovery that has a present value at least equal to the present value of the distribution that such Person would receive if the Estate were liquidated under chapter 7 of the Bankruptcy Code.

**BECAUSE THE LIQUIDATION ANALYSIS AND THE PROJECTIONS ARE BASED UPON A NUMBER OF ASSUMPTIONS AND ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES THAT ARE BEYOND THE DEBTOR'S CONTROL, THERE CAN BE NO ASSURANCE THAT THE LIQUIDATION VALUES WOULD, IN FACT, BE REALIZED IN THE EVENT OF A LIQUIDATION UNDER CHAPTER 7 OR THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY BE HIGHER OR LOWER THAN THOSE SHOWN IN THE EXHIBITS, POSSIBLY BY MATERIAL AMOUNTS.**

C.   **Feasibility of the Plan**. Section 1129(a)(11) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor or any other successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes that the Debtor will be able to meet its obligations under the Plan.

D.   **Confirmation**. The Plan may be confirmed if the holders of impaired Classes of Claims accept the Plan. Classes of Claims that are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable or contractual rights attaching to the Claims or interests of that Class are modified other than by curing defaults and reinstating maturities or by full payment in cash.

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of allowed claims in that class. This calculation includes only those holders of claims who actually vote to accept or reject the Plan. Votes on the Plan are being solicited only from holders of Allowed Claims in impaired Classes who are expected to receive distributions.

In the event that an impaired Class does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of Section 1129(a) of the Bankruptcy Code are satisfied, and (ii) as to each impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. **THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND STRONGLY RECOMMENDS THAT ALL PARTIES ENTITLED TO VOTE CAST THEIR BALLOTS IN FAVOR OF ACCEPTING THE PLAN.** Nevertheless, the Debtor has requested that the Bankruptcy Court confirm the Plan over the rejection of any non-accepting Class in the event all other elements of Section 1129(a) of the Bankruptcy Code are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive. The Debtor believes that, under the Plan, all holders of impaired Claims are treated in a manner that is consistent with the treatment of other holders of Claims with which any of their legal rights are intertwined. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims.

The condition that a plan be "fair and equitable" generally requires that an impaired class that has not accepted the plan must receive certain specified recoveries, as set forth in Section 1129(b)(2) of the Bankruptcy Code. The Debtor believes that the Plan meets the thresholds specified in this section of the Bankruptcy Code.

## XI. EFFECT OF CONFIRMATION

Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

## XII. RECOMMENDATION AND CONCLUSION

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST RECOVERY TO CREDITORS AND IS IN THE BEST INTEREST OF CREDITORS, THEREFORE, THE DEBTOR RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## XIII. OTHER SOURCES OF INFORMATION AVAILABLE TO CREDITORS AND PARTIES IN INTEREST

Additional motions, affidavits, orders or other documentation which might be of interest to any holder of a claim against the Debtor in this proceeding are shown on the docket sheet maintained by the Clerk's office. Copies of the docket sheet and actual items can be obtained from the office of the Clerk of the Bankruptcy Court:

Peggy B. Deans, Clerk
U.S. Bankruptcy Court
1760-A Parkwood Blvd.
Wilson, NC 27893
252-237-0248

(This section intentionally left blank)

Respectfully submitted, this the 16th day of April, 2008.

s/Trawick H. Stubbs, Jr.
TRAWICK H. STUBBS, JR.
N.C. State Bar #4221


s/George M. Oliver
GEORGE M. OLIVER
N.C. State Bar #26587

STUBBS & PERDUE, P.A.
Attorneys for Debtor
P.O. Box 1654
New Bern, NC  28563
(252) 633-2700

Connecticut Avenue Partners, LLC

By: s/John W.R. Bradley
    John W.R. Bradley
    Manager/Member

Connecticut Avenue Partners, LLC
Exhibit A--Assets

| ASSETS | MARKET VALUE |
|---|---|
| **Real Property** | |
| Hotel located at 925 Broad Street, New Bern, NC | $ 3,800,000.00 |
| | |
| **Personal Property** | |
| Cash on Hand | $ 1,300.00 |
| Bank Accounts | $ 1,817.24 |
| Uniforms | $ 1,500.00 |
| Contingent & unliquidated claims against NC Underwriting Assoc and/or Selective Insurance | unknown |
| Accounts Receivables | $ 25,349.77 |
| Office Equipment (Laptops and Copier) | $ 5,000.00 |
| Food Items & Alcohol | $ 1,500.00 |
| Total Personal Property | $ 36,467.01 |
| | |
| **TOTAL:** | $ 3,836,467.01 |

**Connecticut Avenue Partners, LLC**
**Exhibit B--Liabilities**

|  | Claim # | Amount of Claim |
|---|---|---|
| **Class I: Administrative** | | |
| Stubbs & Perdue, P.A. | | To Be Determined by the Court |
| A.G. Salem & Assoc., PLLC | | To Be Determined by the Court |
| | | |
| **Class II: Tax Claims** | | |
| City of New Bern | 9 | $ 19,713.44 |
| Craven County Tax Coll. | 10 | $ 73,592.42 |
| Employment Security Commission | 23 | $ 693.60 |
| Internal Revenue Service | 6 | $ 87,946.93 |
| Internal Revenue Service | 25 | $ 7,500.08 |
| N.C. Dept. of Revenue | 19 | $ 79,394.53 |
| **Total Tax Claims** | | $ **268,841.00** |
| | | |
| **Class III: Midwest Business Capital** | 26 | $ 1,982,885.16 |
| | | |
| **Class IV: Mehta Group, Inc.** | 21 | $ 53,854.49 |
| | | |
| **Class V: SBA** | | $ - |
| | | |
| **Class VI: Days Inn** | 17 | $ 147,943.57 |
| | | |
| **Class VII: GDS** | | $ - |
| | | |
| **Class VIII: Ecolab** | 13 | $ 525.67 |
| | | |
| **Class IX: General Unsecured** | | |
| A G Salem & Associates | | $ 1,242.41 |
| Acceris Communications | | $ 151.64 |
| Adams Business Machines | | $ 95.00 |
| American Express | | $ 34,340.57 |
| American Express | | $ 4,608.32 |
| American Hotel Register | 5 | $ 3,182.67 |
| Amerian International Co. | | $ 2,150.00 |
| American Safety Products | | $ 48.00 |
| Arch Professional Group | | $ 3,401.00 |
| Arnold Plumbing | | $ 80.00 |
| Bank of America | | $ 48,489.18 |
| Bank of America | 15 | $ 27,114.34 |
| Bank of America | 14 | $ 47,371.13 |
| Bogie Hardware Inc. | 2 | $ 131.40 |
| John Bradley | | $ 51,592.04 |
| Carolina Physical Therapy | | $ 459.16 |
| Cintas Corporation | 8 | $ 880.69 |
| Coastal Radiology | | $ 311.00 |
| Colson Services Corp | | $ 73,853.09 |
| Commtrak ARC/IATA | | $ 5.10 |
| Consolidated Laundry | | $ 388.72 |
| Country-Aire Rental, Inc. | 18 | $ 2,743.88 |

| Creditor | Claim # | | Amount |
|---|---|---|---:|
| Courtesy Products LLC | 12 | $ | 515.27 |
| Craven AG Services, Inc | | $ | 25.00 |
| Craven AG Services, Inc | | $ | 250.00 |
| Craven Regional Medical | | $ | 1,164.03 |
| Ecolab Pest Elimination | | $ | 997.91 |
| EMP of Craven County PLLC | | $ | 306.24 |
| Employment Security Commission | 24 | $ | 138.72 |
| G&P Heating & AC | | $ | 187.50 |
| Gallary Collection | | $ | 304.54 |
| Indep Elevator Service | | $ | 1,824.00 |
| Independence Comm | | $ | 176.14 |
| Internal Revenue Service | 6 | $ | 22,144.13 |
| Intracoastal Comm | 22 | $ | 352.70 |
| James Clayton Assoc | 1 | $ | 451.85 |
| Larabee Electrical Contr. | 7 | $ | 275.00 |
| Lion Distributing, Inc. | 11 | $ | 419.00 |
| Max 6004,Inc. | | $ | 3,000.00 |
| Moore's Lawn Express | | $ | 280.25 |
| National Telecommunication | | $ | 300.00 |
| NC Dept. of Revenue | 19 | $ | 20,983.30 |
| New Bern Chamber of Com | | $ | 426.00 |
| New Bern Orthopeadic | | $ | 493.00 |
| One Source | | $ | 655.59 |
| Owen G. Dunn. Co. | | $ | 936.96 |
| Piedmont Coca-Cola Botti | | $ | 352.28 |
| Pittard Perry Crone | 4 | $ | 2,658.33 |
| Quick Badge & Sign Co. | | $ | 81.10 |
| Recognition Specialties | | $ | 246.95 |
| Reliant Computers | | $ | 457.79 |
| Robert Finkel & Assoc. | | $ | 1,050.00 |
| Royal Flush | 3 | $ | 85.50 |
| Safemark Systems, LP | | $ | 983.25 |
| Selective Ins. Co. | | $ | 817.00 |
| TEC Electrical | | $ | 89.20 |
| The Insurance Center | | $ | 890.00 |
| ThyssenKrupp Elevator | 20 | $ | 1,379.46 |
| Traveler Discount Guide | | $ | 898.74 |
| USA Today | | $ | 298.92 |
| Vistagraphics, Inc. | 16 | $ | 3,061.90 |
| Walgreen Company | | $ | 53.72 |
| **Total Unsecured** | | **$** | **372,650.61** |